IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| PRO LAWNS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:14-CV-408-WKW |
| ) | [WO] |
| FIDELITY AND DEPOSIT ) | |
| COMPANY OF MARYLAND, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| W. G. YATES & SONS ) | |
| CONSTRUCTION COMPANY, ) | |
| ) | |
| Movant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is W. G. Yates & Sons Construction Company's ("Yates") contested motion to intervene in this action.  (Doc. # 15.)  Defendants Fidelity and Deposit Company of Maryland and Travelers Casualty and Surety Company of America support Yates's motion to intervene (Doc. # 22), while Plaintiff opposes it (Doc. # 21).  Accompanying and dependent upon the motion to intervene are a motion to compel arbitration (Doc. # 16) and motion to stay the case pending arbitration (Doc. # 17).  Upon consideration of the parties' arguments and relevant law, the court finds that the motion to intervene is due to be granted.

# I. JURISDICTION AND VENUE

The court exercises diversity subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[1]  Personal jurisdiction and venue are uncontested.

# II. BACKGROUND

In April 2012, Yates entered a contract with Auburn University to serve as general contractor on a large campus improvement project named South Donahue Hall ("the Project").  Alabama's "little Miller Act," *see* Ala. Code § 39-1-1(a)[2], required Yates to execute a payment bond to Auburn University for the protection of persons supplying labor and materials in the prosecution of work on the Project. (Doc. # 16-2, at 11–12).  Defendants are the co-sureties of the statutorily required

---

[1] Yates is a citizen of Mississippi (Doc. # 16-2, at 2), and there is no argument that Yates's joinder to this suit would destroy diversity subject-matter jurisdiction and Plaintiff's choice of federal forum.  Pro Lawns is a citizen of Alabama and Defendants are citizens of Illinois and Connecticut.

[2] Subsection (a) of the statute provides:

Any person entering into a contract with an awarding authority in this state for the prosecution of any public works shall, before commencing the work, execute a performance bond, with penalty equal to 100 percent of the amount of the contract price.  In addition, another bond, payable to the awarding authority letting the contract, shall be executed in an amount not less than 50 percent of the contract price, with the obligation that the contractor or contractors shall promptly make payments to all persons supplying labor, materials, or supplies for or in the prosecution of the work provided in the contract and for the payment of reasonable attorneys' fees incurred by successful claimants or plaintiffs in civil actions on the bond.

The "little Miller Act" is so called because it is modeled after the federal Miller Act, which requires that contractors on federal public works projects obtain both payment and performance bonds for contracts exceeding $100,000.  *See* 40 U.S.C. § 3131(b).

2

bonds that they and Yates executed and delivered to Auburn University in April 2012.

Yates subcontracted landscaping and irrigation work on the Project to Plaintiff Pro Lawns, Inc. (*See* Doc. # 16-1 ("the Subcontract").) The Subcontract contemplated payment to Pro Lawns in the amount of $238,800. Pro Lawns claims that during the course of its performance of the Subcontract, "certain circumstances beyond [its] control . . . required [it] to submit various change orders to Yates" totaling $37,906. (Doc. # 1, at ¶ 10.) Pro Lawns additionally complains that due to Yates's errors during the course of the project, Pro Lawns had to submit additional invoices for $25,803.16. Pro Lawns has been paid $111,249. Yates has refused to pay the balance Pro Lawns claims Yates owes because Yates says Pro Lawns failed to follow the Subcontract when it submitted change orders that were either not signed by Yates's authorized representative or that were not supported by adequate documentation. Yates also asserts that it has supplemented Pro Lawns's work on the Project at an expense of $87,763.43, which Yates counts against the amount Pro Lawns claims it is owed.

Pro Lawns made demand against the bonds on March 24, 2014, and Defendants declined to make payment to Pro Lawns on May 16, 2014, citing the dispute between Pro Lawns and Yates. (Doc. # 21-1, at 3 (Letter from Zurich Surety and Financial Claims).) Plaintiff initiated this action against Defendants on

June 3, 2014. Defendants answered the complaint on July 11, 2014. A uniform scheduling order was entered on August 1, 2014.

On August 25, 2014, Yates, who is represented by the same counsel as Defendants, filed a motion to intervene as a defendant (Doc. # 15) and a motion to compel arbitration (Doc. # 16) pursuant to the Subcontract with Pro Lawns.[3] Defendants filed their consent to Yates's intervention (Doc. # 22) and a motion to stay proceedings pending arbitration (Doc. # 17). Pursuant to the court's directive, Pro Lawns has filed a response to the motion to intervene only, contending that Yates is not entitled to intervene under Rule 24(a) and should not be allowed to intervene under Rule 24(b). (Doc. # 21.) Yates has replied. (Doc. # 23.)

### III. RULE 24(b) STANDARD OF REVIEW

In federal court, if a would-be intervenor "has a claim or defense that shares with the main action a common question of law or fact" and he makes his request for intervention in a "timely motion," Fed. R. Civ. P. 24(b)(1)(B), then intervention is within the court's discretion, *Athens Lumber Co. v. Fed. Election Comm'n*, 690

---

[3] (*See* Doc. # 16-1, at Article XIV, Paragraph 14.1 ("Claims, disputes, and other matters in controversy between the Contractor [Yates] and the Subcontractor [Pro Lawns] . . . arising out of or relating to this Subcontract shall be decided by binding arbitration in accordance with the current and applicable Construction Industry Rules and procedures of the American Arbitration Association . . . .").)

4

F.2d 1364, 1367 (11th Cir. 1982); *cf.* Fed. R. Civ. P. 24(a).[4]  The intervenor's "motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (requiring the court, when evaluating the movant's "timeliness," to consider (1) the length of any period of purposeful delay attributable to the movant, (2) the extent of prejudice to the existing parties that resulted from the movant's purposeful delay, (3) the extent of prejudice to the movant if the motion is denied, and (4) the existence of unusual circumstances that weigh for or against a finding of timeliness).

## IV.  DISCUSSION

**A.     Common Question of Law or Fact Requirement**

Yates and Defendants assert that Defendants will not be liable to Pro Lawns until it is adjudicated that Yates is liable to Pro Lawns. *See Fed. Ins. Co. v. I. Kruger, Inc.*, 829 So. 2d 732, 736 (Ala. 2002) ("The contractor must be liable for some claim . . . before the surety can be liable."). Therefore, Yates and Defendants

---

[4] Although Yates framed its motion in terms of Rule 24(a) or (b), Yates has conceded in its reply brief that it cannot satisfy the heavier burden of showing entitlement to intervene as of right under Rule 24(a). (Doc. # 23, at ¶ 1.)  The court appreciates the honest concession.

argue that intervention is permissible under Rule 24(b) because Yates's dispute with Pro Lawns has common questions of law and fact when compared with Pro Lawns's complaint against Defendants. Pro Lawns does not dispute that potential claims and defenses between Pro Lawns and Yates are factually common to the issues to be litigated between Pro Lawns and Defendants. The court agrees and finds that this prong of the Rule 24(b) standard for permissive intervention is easily satisfied.

**B.     Timeliness Requirement and Length of Time**

Pro Lawns cites the almost seven-week delay between Defendants' answer and Yates's motion to intervene as a factor militating against a finding that Yates's motion was timely filed. However, as Yates points out, there has been no substantial progress in this case since it was filed in June, and Pro Lawns does not dispute that the parties have yet to engage in discovery. While it is unclear why Yates did not move more promptly to intervene, the court cannot conclude that a prejudicial amount of time has passed, rendering Yates's motion untimely. Consequently, the court will not deny the motion as untimely filed.

**C.     Satisfaction of 24(c) Pleading Requirement**

Pro Lawns contends that Yates's motion is due to be denied because there is no "pleading" accompanying the motion to intervene "that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Pro Lawns cites

Rule 7(a)'s list of recognized "pleadings," Fed. R. Civ. P. 7(a), notes that an attached motion to compel arbitration is not a "pleading," and further contends that the motion to compel lacks "notice of [Yates's] legal claims and defenses." (Doc. # 21, at 10–11.)

Yates responds that courts have been lenient with respect to Rule 24(c)'s attached pleading requirement, "particularly where there is not actual prejudice to the opposing party" or where "an intervenor is not seeking to become a party to th[e] litigation." (Doc. # 23, at 4 citing, among other cases, *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 412 (W.D. Pa. 2006) ("Though no pleading – as that term is strictly defined in Fed. R. Civ. P. 7 – accompanies [the movant's] motion [to intervene], [the movant] has included its Motion to Compel and Stay, and the purpose of the intervention and the [movant]'s conduct that the parties can expect going forward are quite clear.").)[5] Yates notes that the Eleventh Circuit has chosen "to disregard nonprejudicial technical defects" related to Rule 24. *Piambino v. Bailey*, 757 F.2d 1112, 1121 (11th Cir. 1985).[6]

In the absence of direct instruction from this Circuit, the most apt guidance comes from the *Sheesley* decision, where a district court concluded that the

---

[5] Yates cites several other cases liberally construing Rule 24(c), but only *Sheesley* is squarely on point.

[6] A review of *Piambino* and cases from the courts in the Eleventh Circuit which have cited *Piambino* reveals that no court has been faced with the situation of a would-be intervenor seeking intervention only to compel arbitration.

movant's failure to attach a pleading to its motion to intervene was not a fatal defect. Relying on case law from several circuits, the court reasoned that Rule 24(c)'s requirement is "simply to notice the parties as to the [movant's] position and argument," and that the defect is excusable where the motion to intervene is otherwise meritorious and where no party suffers any prejudice from the defect. 239 F.R.D. at 411. With respect to prejudice to the plaintiff, the court reasoned as follows:

> [The movant] does not seek to intervene for the purpose of advancing its own claims against an existing party, but to compel the arbitration to which it contends [the plaintiff] is obliged to resort. Thus, to insist that [the movant] accompany its Motion to Intervene with a proper pleading would be to command that [it] needlessly expend resources. It would not help efficiently resolve the dispute *sub judice* to require that [the movant] file a third-party complaint so that it may immediately seek a stay of its claims in favor of the arbitration proceedings for which it intervened in the first place. To the extent that judicial economy is a consideration in intervention analysis, it makes little sense for the Court, at the expense of parties who could face extensive litigation over strongly related issues, to bind itself to language few judges have found intractable. To do so would make of Rule 24(c) a classic elevation of form over substance.

*Id.* at 412.

Upon consideration of the persuasive reasoning in *Sheesley*, the court finds that Yates's non-inclusion of a pleading pursuant to Rule 24(c) is not a prejudicial defect and is therefore not a grounds for denying intervention. It is apparent that Yates intends to intervene in order to compel arbitration of its liability to Pro

Lawns, and therefore, Yates is excused from attaching a true "pleading" to its motion to intervene.

### D. <u>Undue Prejudice or Delay to the Existing Parties or the Movant</u>

The remaining arguments before the court relate to prejudice. Although some courts have considered prejudice to the existing parties as a factor impacting a motion's timeliness, *see Chiles*, 865 F.2d at 1213, undue prejudice is a Rule 24(b) factor to be considered independently of timeliness. Fed. R. Civ. P. 24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."). The court may also consider prejudice to the moving party should its motion be denied, *Chiles*, 865 F.2d at 1213, but Yates has not argued that it will be prejudiced if the motion to intervene is denied – only that Pro Lawns will not be prejudiced if the motion is granted (Doc. # 23, at 5).

Pro Lawns argues that it had a right to choose to sue Defendants as the bond sureties, and there is no prejudice to Yates because Yates expressly agreed, under the terms of the Payment Bond, to allow a claimant like Pro Lawns to choose to sue it, the sureties, or both it and the sureties. Indeed, the Payment Bond allows a "claimant [to] bring a civil action . . . on th[e] Bond *against the Contractor and the*

9

*Surety, or either of them*, . . . ." (Doc. # 16-2, at 12 (Payment Bond ¶ 4) (emphasis added).)[7]

Pro Lawns invokes *Coltin Electric, Inc. v. Continental Casualty Co.*, No. 12–0532–KD–B, 2013 WL 1150920 (S.D. Ala. Mar. 19, 2013) (DuBose, J.), in support of its request that this court credit the language in the bond permitting it to sue Defendants instead of Yates. In *Coltin*, a general contractor hired a subcontractor to furnish labor, materials, and supplies for electrical work on a dormitory at the University of South Alabama. *Id.* at *1. The contractor arranged a payment bond in compliance with Alabama's little Miller Act, and, like the bond at issue in this litigation, the bond provided that a subcontractor-claimant could sue the surety alone, the contractor alone, or both the surety and the contractor. *Id.* at *2. The subcontractor chose to sue the surety alone.

The contractor filed a motion for permissive intervention under Rule 24(b). If intervention had been allowed, the contractor would have answered as a defendant, filed a counterclaim against the subcontractor and a third-party complaint against another subcontractor. The court denied the motion for two reasons, the first of which relates to Pro Lawns's position before this court. Interpreting the governing bond document, the court noted that payment bonds under Alabama law are construed under general principles of contract

---

[7] The language of the Payment Bond is identical, except for variations in capitalization of particular words, to the little Miller Act. *See* Ala. Code § 39-1-1(c).

interpretation.  *Id.*  The court found the bond unambiguously allowed a subcontractor to sue the surety alone.  *Id.*  It reasoned that because the contractor, which had chosen the terms of its bond document, "intended for [the subcontractor] to have the right to decide whom to sue, [the contractor] will not be prejudiced by the denial of its motion to intervene.  On the other hand," the court explained, "[the subcontractor]'s right under the contract to make such an election" of who to sue "would be prejudiced should [the contractor] be allowed to intervene."  *Id.*  The nature of the prejudice to the plaintiff-subcontractor is unstated, but the prejudice is implicitly that the subcontractor was denied his right to choose to sue the surety alone.

Thus, *Coltin* supports a conclusion that an Alabama federal court should not allow a contractor to intervene into a subcontractor's lawful suit under the little Miller Act against a bond surety if intervention will prejudice the original parties.  *Id.* at *2.  Yates distinguishes *Coltin* by noting that opinion's additional analysis that permitting intervention would have destroyed diversity subject-matter jurisdiction and defeated the plaintiff's choice of federal forum, (Doc. # 23, at 3), but the distinction does not address *Coltin*'s analysis regarding the subcontractor's choice to sue the sureties alone.

A more significant distinction is the absence of the *Coltin* plaintiff's strategy for avoiding arbitration with a general contractor.  Unlike the present case, that

11

plaintiff's decision to sue the surety alone was not intermingled with its desire not to arbitrate. Arbitration is a non-factor in *Coltin*. The presence of the arbitration variable in this case raises the question of whether a plaintiff's tactical avoidance of arbitration is a legitimate goal to be protected when weighing the impact of prejudice to the existing parties under Rule 24(b). Yates encourages the court to consider the principles of judicial economy, the prevention of multiple actions, and the strong federal policy in favor of enforcing arbitration agreements. (Doc. # 23, at 2–3 (citing *Frank M. Sheesley Co.*, 239 F.R.D. at 415–16).)

Again, the *Sheesley* decision persuasively supports Yates's position. There, the court was faced with a situation nearly identical to the case *sub judice*, except that the payment bond at issue was required by the federal Miller Act rather than Alabama's similar law. *See id.* at 407. The agreement between the contractor (the moving intervenor) and subcontractor (plaintiff) similarly required arbitration of disputes. *Id.* The opinion does not cite the bond language entitling the subcontractor to sue the sureties alone, but the fact that the subcontractor sued the sureties alone without objection that the contractor must be joined makes evident that the subcontractor had the right under the payment bond to sue only the sureties without joining the contractor.

Agreeing with the contractor's arguments in favor of permissive intervention under Rule 24(b), the court reasoned that Rule 24 "is meant to prevent the kind of

multiplicity of suits" threatened by the facts of the case. *Id.* at 415. The court found that allowing intervention (and subsequently staying the original suit pending arbitration between the contractor and subcontractor) promoted judicial economy and would likely achieve a faster resolution of the dispute at less cost to all parties. *Id.* ("Any potential for undue delay is likely to be mitigated, not exacerbated, by arbitration." (citing *U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 939 (D. Md. 2004)).)[8] [9]

Upon consideration of the parties' arguments, the court declines to follow *Coltin* as persuasive authority and instead finds *Sheesley* to be the more appropriate persuasive precedent. Although Pro Lawns is entitled to sue Defendants alone without joining Yates, it is also contractually bound to arbitrate the same underlying factual disputes with Yates.[10] Granting the motions to

---

[8] The district court in *MPA Construction, Inc.* reached the same result as the *Sheesley* court and permitted a contractor's request to intervene under 24(b). 349 F. Supp. 2d at 939.

[9] The *Sheesley* court went on to address the subcontractor's objection that the sureties would not be bound by the outcome of a compelled arbitration and would relitigate issues in the federal case, thereby defeating the benefit of judicial economy. (No similar objection has been raised in this case.) The court surveyed the law of the federal circuits and concluded that the prevailing view among the circuits protected similarly situated subcontractors from relitigating after arbitration where the litigating sureties' interests were directly related or congruent to the arbitrating contractor's interests. *Id.* at 417–19 (citing *Isidor Paiewonsky Assocs., Inc. v. Sharp Properties, Inc.*, 998 F.2d 145, 155 (3d Cir. 1993)). Another district court has adopted *Sheesley*'s research and allowed Rule 24(b) intervention in spite of similar objections by a subcontractor-plaintiff. *See A.A. Bellucci Const. Co. v. U.S. Sur. Co.*, No. 4:09-CV-1755, 2010 WL 456775, at *1–2 (M.D. Pa. Feb. 2, 2010).

[10] The court has examined the Payment Bond and the Subcontract to see whether either references or incorporates the other. Neither does. While it has not been argued, it is notable that the Subcontract contains language resolving any "ambiguity, inconsistency, or conflict in

intervene, compel arbitration, and stay will not unduly prejudice Pro Lawns's rights or delay final resolution of the dispute. To the contrary, permitting intervention will promote judicial economy.

## V.  CONCLUSION

In accordance with the foregoing analysis, it is ORDERED that Yates's motion to intervene (Doc. # 15) is GRANTED.

It is further ORDERED that on or before **January 30, 2015**, Pro Lawns shall SHOW CAUSE, if any there be, why the attendant motions to compel arbitration and to stay the case (Docs. # 16, 17) should not be granted.

DONE this 23rd day of January, 2015.

                                              /s/ W. Keith Watkins
                                      CHIEF UNITED STATES DISTRICT JUDGE

---

payment or other provisions between or among the Prime Contract, th[e] Subcontract, any bond, and/or other agreement or instrument" in favor of the Subcontract. (Doc. # 16-1, at 5 ("[T]his Subcontract shall govern.").)